Good morning. May it please the Court, Bernard Eskandari on behalf of the people of the State of California. I'm here for plaintiff petitioner. Petitioner will be splitting their time with amicus, the California Governor's Office. I will be taking 15 minutes and Mr. Goldman will take five minutes on behalf of the Governor. I would like to please reserve five minutes for reply. All right. Please be reminded that the time shown is your total time. I appreciate it. Thank you, Your Honor. All right. The requirements for mandamus under Bauman are met here. In this case, the Attorney General of California is civilly prosecuting Meta under his state constitutional and statutory authority to enforce the law. The District Court ruled that the Attorney General's exercise of his independent power under state law effectively subjects every officer and every agency of the California to party discovery and federal court. The consequences of this are immense, as you can tell from the joinder of 20 state attorneys general to the petition and the amicus submission from a bipartisan group of state governors. And the decision from the District Court was egregiously wrong. Well, can I ask you a procedural question to begin? You filed your petition for the writ before the District Court's order, so while the magistrate judge's order was pending, and then subsequently there was a District Court order. Which order are we reviewing? Is it both or if it's one or the other, why? We're reviewing, I think, technically the magistrate judge's order to the extent it's modified at all by the District Court. So the magistrate judge's order was entered in September. The District Court ruled on the objection, I'm drawing a blank, six months later approximately. March. March, that's right, and affirmed in all relevant respects as to California. Did reverse as to seven or eight states, I believe, but as to California, affirmed in all relevant respects. So the order up here on review I submit as the magistrate judge's order and that the petition for mandamus is ripe and ready. Well, both of them are from the District Court technically. That's right. Yes. That's right. That's right. So what do we do? I know it's not your clients, but with the seven or eight states that received relief from the District Court's order affirming the magistrate judge's order, are their claims moot? I mean, so I don't have the, I believe all of the states that received relief from the District Court are not a part of this appeal. And so any relief, I believe, I don't want to speak for them. I'm being a little imprecise, but I don't believe they're a part of this petition. And so, I mean, if the Court is going to rule in a favorable manner for the states, I think it's going to articulate a rule that is going to benefit all states, all State Attorneys General, and probably law enforcement actions around the country and certainly in the Ninth Circuit. So while those states, Attorneys General, are not part of this petition anymore, a broad enough rule is going to redound to their benefit. In other words, the ruling will affect their behavior in the future because it'll apply to it. Absolutely. That's exactly correct, Your Honor. Missouri and Rhode Island, you represent in your opposition to Mehta's motion for filing a supplemental declaration that these two states have dismissed their claims with prejudice, but they are two of the states that received relief from the District Court. So procedurally, it's a little odd. That's right. That is correct. Missouri received relief, yet still dismissed. Rhode Island, I don't have the Venn diagram perfectly in front of me, but there are a couple of states that, yes, did receive relief and they're not a part of this petition. So did they dismiss before the District Court's order? Missouri was after. Okay. So was the relief that was entered by the District Court insufficient? Is there some... I apologize. I can't speak on behalf of Missouri or their internal workings at the Attorney General's office. But to at least some degree, this would undercut your argument that this is a form of harm, serious irreparable form of harm that can't wait on appeal because states are dismissing their claims with prejudice when apparently two of them have done so even after getting relief from the District Court. I think states' Attorney General's offices have different prosecutorial values and principles and resources, and so I don't think it's fair to read too much into the reasons for dismissal. And we still have 21 states that are part of this petition. We still have at least 10 states that dismissed because of the magistrate judge's order either outright or significant state law claims. And so I submit that the consequences of the harm is manifest even if there might be a couple of anomalous situations. I'd like to ask what the limiting principles are for your position. When would Rule 34, party discovery, be appropriate as opposed to Rule 45, non-party discovery? So I'll give you three examples. One is the state agency has supplied the state Attorney General with information that's necessary for an enforcement action. So they're somewhat involved in the enforcement action. Two is the state AG is seeking damages on behalf of the agency. And then three is the Attorney General is representing the agency in a discovery dispute. In those circumstances, would you agree that a Rule 34 party discovery would be appropriate? I can step through those. I'm happy to. So first one, state agency supplied the info, was involved. I think it's a practical matter that if information was provided to the Attorney General's office in support of the litigation or the investigation of the prosecution, the Attorney General's office would be in possession, custody of control of the material that was provided. And so the Rule 34 analysis is fairly straightforward. The Attorney General's office would review its own files. And if it had them, it would be in possession and custody. But it wouldn't go in and reach the state agency's documents? No, I don't think so. But I think that is a closer case than certainly what we have here, where no state agency was involved in bringing the action. No state agency was involved in the investigation. No state agency had a hand in deciding whether to bring this action. And no state agency is going to receive redress or damages because of it. Did any state agency provide any documents to the AG's office in terms of deciding whether to bring the action? I'm going to say no. And I take that question very, very seriously. And I was part of the investigation. I am virtually certain that nothing was provided. And if it was, it would have been random. It would have been a no part, you know, a material part of the investigation. So I want to be careful with my words, but effectively no. Damages. I think damages for state agencies does potentially change the calculus. Again, here that is not the situation. And I know there have been out of circuit magistrate judge decisions that have found this to be a relevant factor. That's Monsanto and Generics that were cited at length by the lower court. I don't think those decisions were correct. I think in California, the divided or dual executive structure makes clear that the Attorney General does not have access or control over independent state agency documents. But why is that the case? I mean, doesn't the dual executive or the divided role just mean that there are two entities? And that just tees up the whole question, is there control? The fact, if they were one entity, then we wouldn't even have the question. So you seem to be reading an awful lot into that structure that, in my view, doesn't answer the question. So your Honor's right. I do read a tremendous amount of that structure. So California is set up completely differently than the federal government, which is a unitary executive, which operates under the authority of the President. California has a constitutionally divided or dual executive structure. We've got the Governor, who's an independently elected statewide official, and we have the Attorney General, who's an independently elected statewide official. They do not necessarily agree. They might have different priorities, policy priorities. They might be of different political parties. California is somewhat of an anomaly. In fact, in this state, they've been of varying parties. What this means is that one independent officer cannot have access or control over another independent officer's documents, including from the agencies under that officer's control. And now, your Honor's right. Am I reading too much into that? I think that's a fair question. The thing is, California has answered this question with cases like Lockyer going back decades, that in this precise situation, discusses and holds what the import of that divided executive structure is, and it is exactly what I'm saying. So what happens with the divided structure if the Attorney General's office is then defending or representing agencies? So then we are in what I call the attorney-client or law firm analysis of this case. And that's exactly what the District Court relied on, believing that the Attorney General's role as sometimes outside counsel to various independent state agencies provided the Attorney General with legal control. I believe, and I respectfully submit, that that view profoundly misunderstands the lawyer-client relationship. The Attorney General's office acts as a law firm to a variety of state agencies and officers on a variety of matters. But as a matter of law, this question is answered in California, as confirmed by Lockyer and confirmed by AB 137, which the legislator just enacted in June, effective immediately. It establishes the Attorney General's office does not have special access or control over state agency documents, even when acting in an outside counsel law firm-type capacity. And more generally, lawyers never have access over their client's documents. They are the agent of the client. Covington and Burling is here representing MEDA. If I said that we're entitled to party discovery of documents from all of Covington's other tech clients who are not a part of this lawsuit, I would rightfully be laughed out of this court. Government lawyers are subject to the same ethical standards as all attorneys. Our powers, our ethics, our guidelines are not altered by being government lawyers. And that's Duke Magian v. Brown. It's go to California Supreme Court in 1981. But what if you're representing a state agency in the discovery dispute? I still do not think we have any authority to run into Mr. Goldman's office and take documents from it. We operate as outside counsel, as a law firm would. We're paid by the hour. Okay. But as their attorney, you have a legal duty to supervise their document production. As their attorney, you have to take proactive steps to collect their documents, to give them a litigation hold order to preserve their documents. Why wouldn't any of those obligations apply if you're representing them in a discovery dispute? They would, Your Honor. The thing is the legal control analysis under citric acid requires that there must be a legal right to obtain documents on demand. And all of those rules and guidelines and ethical obligations do not provide the legal right to obtain documents on demand under citric acid. Otherwise, my hypothetical- So what is your position then? That a Rule 45 subpoena has to be issued first for then the attorney-client relationship to be established and then you have legal possession of their documents? No, I don't- Under what scenario, if any, would you then, as the state AG, have the possession and control of a state agency's documents? I think if they are actually, first, the easy answer is if they're actually in our possession or control in my files. And I think there might actually be some limitations if a lawyer possesses his client's documents, whether it's actually possession or control. But I think that is an easier case if I actually have them. I don't think there is a situation where I have the ability to break into Mr. Golden's office and take documents. I can guide him. I can provide him with how to do what he should do. But at the end of the day, I am his agent. But it still would be your responsibility to collect the documents from him and to produce them to the opposing party? No doubt. But it would not provide me with legal control under citric acid, which is the legal right to obtain documents upon demand. So in other words, you're saying as the attorney, you can ask for those documents to be produced on behalf of whoever is seeking those, but you can't go in and get them without the permission of the agency that actually has the control of the document? That's exactly right, Your Honor. Thank you. I think, Judge Koh... So you're saying even if there's a Rule 45 subpoena, non-party subpoena on a state agency, you still do not meet the citric acid test. Those documents are not in your possession or control. In that situation, they're already, in my hypothetical, there is an actual attorney-client relationship between the state AG and the state agency. I appreciate that I could be being pushed into a position of absurdity, and I really hope that I'm not. But I do not believe an attorney has the ability to take their client's documents if the client says no. There are obligations, certainly, but I do not know what authority would give the attorney the legal right to obtain upon demand, which is the standard of citric acid. In that situation, why couldn't the district court just sanction the state agency instead of sanctioning the attorney general in that situation? I think that is right, and we never got there because there's a Rule 34 order from the magistrate judge. The magistrate judge held that the attorney general's office was in possession, custody, and control over all documents, effectively, in the state of California. But even in that situation, why couldn't the district court still have sanctioned the state agency? Can they sanction a non-party? Can the court sanction a non-party? I think there would have been a Rule 45 analysis, and there would have been geographical limitations, and all sanctions coming out of that would have been under the Rule 45 analysis, which provides additional protections, exactly as Judge Rawlinson points out, because these are third parties to the litigation. All of these state agencies that are at issue right now have nothing to do with this case other than meta-dragging them in. They should have gotten Rule 45 protections, which I'm sure Ms. Coulmson talked about. Would your argument change if—you're saying it doesn't matter whether the AG's office is representing these agencies. You don't have legal control over the documents. The agency's a party. You're representing them. Does the AG's office have control over the clients? They're still a client. They're a party, but they're still your client, and you're saying there's this separation between the two, so it seems like the end of your argument is no. Even if they're a party, they're their documents, and we don't have the legal control over them. So I see I'm over time, and if I can respond quickly. Yes, please. I think that analysis is just the traditional lawyer-client analysis that would apply when attorney's general's office is acting as outside counsel or a law firm to a party. If Cummington Burling is operating as outside counsel, law firm to a party. And I think we would all agree that there is no authority that gives an attorney the legal right to obtain upon demand its client's documents. Yes. So, Counsel, just to follow up on that a little bit. Oftentimes, there are outside attorneys that are representing the governor or a particular agency. It's not always the attorney general. Is that correct? That is correct, even in this case. Thank you, Your Honor. So, if the other, if an attorney that is not in the attorney general's office is representing the state agency, would they have control over the documents of that agency? Very, very helpful hypothetical. I appreciate that. Exactly in this situation, Olson Remto is operating as outside counsel to the governor's office. I don't think they are imbued with any lesser or more or special powers than when the attorney general does it and acts in a law firm capacity. That would be difficult. In my opinion, it would be difficult to make a rule that says if the attorney general is representing the state agency, the attorney general has custody and control. But if outside counsel is representing the state agency, they don't have control. Very, very fair point and a very, very good one. Thank you. So, the result is that counsel, whether they're representing a party or a third party, has no control over the production of documents in response to either a discovery request or Rule 45 subpoena. And so, what's the court's enforcement power? They have to sanction the party. The lawyer then makes a representation that, hey, we're responding to discovery as best as we know, but we don't really have access. Then what? I mean, what is the lawyer signing? Are they signing something to notify the court and the other parties that, hey, we don't really know if this is everything. We don't have control here. So, two very quick points. I want to be sure we're being very, very precise about the control language because it's legal control under citric acid, which is the legal right to obtain documents upon demand. Colloquially, lawyers might have control over the client's documents because clients listen to lawyers. But legal control as a matter of law under citric acid is a very, very different thing and a very, very powerful thing. And so, I don't want to lose sight of the fact that attorneys do not have citric acid legal control over the client's documents. That's a position we're staking out here. We also have to put into perspective Rule 34 and Rule 45 because there are different mechanisms if an entity is a party as opposed to a non-party. And that's part of the issue here is that the magistrate judge, in essence, treated non-parties as parties. It's 100% correct, and I thank you again, Your Honor. As to Judge Beatty's point about sanctions, I think conflicts with clients and lawyers occur all the time about strategy and approach, and lawyers have to give ethical, legal advice and cannot advance a crime. And I think if a client is going to be suppressing documents, refusing to turn them over, refusing to — the attorney is put in a very tough position, but probably termination of the representation is appropriate, as it would be in other situations where there is massive conflict between attorney guidance and client prerogative. All right, counsel, you've exceeded your time. We hope you go there. Thank you very much. We'll give you a couple of minutes for rebuttal. We'll hear from the governor. Good morning. May it please the Court. Brian Goldman from the California Governor's Office on behalf of the governor and the agencies in his administration, and we thank the Court for allowing us to participate today. It is common ground here that the attorney general can be compelled to produce our records only if he has legal control over them. And legal control under Rule 34 often turns on substantive state law questions, questions of corporate law, property law, contracts under state law, and the like. And here, California constitutional and government law has provided — excuse me — has a case in his independent capacity, not representing state agencies. He has no control over independent agencies' records and no legal right or duty to obtain them. Last month, in AB 137, the California legislature and governor codified what the California judiciary had long held. And I want to be very clear in response to the colloquy that my colleague just said, that the attorney general's office never represented the governor or the agencies in this matter. So we're only talking about the scenario in which the AG is bringing cases as a public prosecutor in his independent capacity, not where a state agency has chosen to retain the attorney general's office. And can you also confirm that the AG is not seeking damages on behalf of the California governor or California state agencies? That is correct, Your Honor. We had no hand in developing the claims, choosing the forum, supplying information to support the claims. We would not stand to benefit from the AG's success in this matter because of the way that potential damages are divided under Section 17206 of the Business and Professions Code. We are strangers to the case until the point at which the attorney general was told, essentially by the district court or by the magistrate judge in the district court, that an attorney-client relationship was being inferred and effectively imposed on us, even when there was none. And in reality, the governor's office agencies have their own in-house counsel. That's why I'm standing here. We also retain outside counsel in appropriate cases. That is often when, if there's a specialized matter or if the attorney general doesn't have capacity to represent the agencies, or in cases like this, where the attorney general is already in the case in a different role, and it would set up a conflict or at least a confusion of roles, and we wish to keep that separate. Are you arguing that the governor's office and other state agencies were not permitted an opportunity to be heard during this dispute? We were not permitted an opportunity to be heard before the magistrate judge ruled. We didn't know about the existence of the case before it was filed and even after it was filed. Did you get litigation hold letters at some point? We got litigation hold letters several months in. I believe that was July 2024, after the magistrate judge had directed counsel for the attorney general's office to coordinate with the agencies. That was our first awareness of this issue arising, and the attorney general's office was litigating the matter before the magistrate judge, not on our behalf, but on his own behalf, explaining it is unfair to compel us, the attorney general's office, to seek these records when California law provides to the contrary. And I do want to emphasize the significance of the California law here, because I think the mistake the district court made is precisely the same mistake that the John Bonk Fourth Circuit made in the Berger case out of North Carolina. What the Fourth Circuit said there, which the question was whether the members of the North Carolina legislature could intervene to defend a law that they didn't think that State officials were defending zealously enough, and they invoked a North Carolina law that gave them the right to intervene. And the Fourth Circuit said, that's all well and good in State court, but you're in Federal court now, and we apply Rule 24 of the Rules of Civil Procedure. That sets a high bar. We are going to presume that you are adequately represented by other parties. And the Supreme — So what are the implications for the State agencies or the governor's office of proceeding by Rule 34 or 45? So, multiple implications, Your Honor. First is, the way — and maybe I can answer that by talking about the way this should have worked and generally does work in other cases, which is, as a third party, we would receive a subpoena directly. That would go in-house to someone like me to review and assess whether that's something we could respond to purely with in-house counsel, including potentially raising objections or invoking the protections under Rule 45, most notably the ability to seek cost-shifting in order to deter aggressive requests on the part of the other party. If it's a matter that we would need outside counsel for, then there would be a decision point. Do we go to our usual outside law firm, the Attorney General's office, who we pay by the billable hour, just like any other law firm, or do we go to a private outside counsel firm? And in a case like this, we would and did go to a private outside counsel firm to keep that separation. We would then be negotiating the terms of a Rule 45 subpoena directly with the requester. And again, that is ultimately what happened here when MEDA eventually backed down and decided that they cared more about getting the documents than they did about requiring that this all proceed through the Attorney General's office under Rule 34. So MEDA eventually agreed to narrow their request and proceed under Rule 45 while still maintaining that the Rule 34 was out there, the threat of sanctions was out there, and so it was all against the backdrop. Kagan. Were you, I think in your discussion of the Fourth Circuit case, you may have been leading up to a discussion of whether Erie applies here, because this is not a diversity case. That's correct. It's not a diversity case. And my point is not so much Erie as that the Supreme Court said in a case involving application of the Federal rules of civil procedure that we need to take State sovereignty very seriously, and that it is no answer to say that the North Carolina statute that said that State legislators were permitted to intervene is a rule of State law as opposed to Federal law. We can't invoke presumptions that would work against respecting the structure of State government. Well, here, I mean, it seems there's another problem in that the citric acid test, the legal control, the magistrate judge and the district judge both did pretty extensive analysis of State law to determine if there was control. So the argument that they couldn't consider California law, it seems to be some inherent inconsistency in the orders to say that California law isn't controlling or shouldn't be considered because this is a question of Federal procedure, but meanwhile, we're going to parse through all the State law with the other States. I very much agree, Judge Beatty, and I would just note that I think the main problem in the district court's order is that it turned a blind eye to the most significant piece of State law, which at the time was the Barrett and Lockyer decisions, again, now codified expressly in statute. But those are cases that answer this question, does the Attorney General have legal control over the documents of independent State agencies when the AG is bringing an independent prosecution? And the answer is no. And the problem there with ignoring that law is that it upended the structure of California government and essentially made the governor and the agencies under the governor subservient to the AG's litigation priorities. And this is not an academic question of sovereignty and federalism. This had real-world impacts. This meant that all of a sudden we had to divert members of our small team from work on Los Angeles fire emergency orders and response efforts to work on a very tight timeline set by a trial schedule that we were not part of and had never agreed to in a case that, again, we had no hand in bringing in order to engage in document production, oversee an outside e-discovery vendor, and the like, all because we were all of a sudden brought into this matter and at the point at which sanctions had already been threatened and told that the AG— But you agree, even as a non-party, you could be sanctioned for abusive litigation practices? I do, Your Honor, and I want to address the question about what would happen in a case. For example, if we had said to our outside counsel, we refused, thank you for passing along the subpoena, thank you for trying to raise objections, sorry, we're just not going to cooperate. At that point, first of all, outside counsel likely would have withdrawn from the representation because they would not be able to come into court and say that they were having an effective relationship with their client. In-house counsel, the person in my position, I think could fairly have been brought into court directly at that point if there was an order directly targeting that entity. And the problem here is that there was never any order targeting the agencies in the sense of served on the agencies as to which they— Rule 45 subpoena was served on the agency. A Rule 45 subpoena was eventually served on the agency, and we responded— And you agree that if you receive a Rule 45 subpoena, a district court could sanction a non-party pursuant to a Rule 45 subpoena for abusive litigation practices, correct? Absolutely. I don't dispute that for a second. The problem is that's not what happened here. Up until the point at which Meta decided to back down after having already sought sanctions, sought to enforce the Rule 34 order, Meta eventually said, we'd rather just get these documents already. Fine. You say you will only respond to a Rule 45 subpoena. As a courtesy, here is a Rule 45 subpoena. And we said, great. We have never suggested that we had no obligation to submit documents in response to anything. It's just that it had to be the proper process with the proper protections. Because there's a cost associated whether you go under Rule 34 or Rule 45. A very substantial cost, Judge Rawlinson. In this case, a $2 million cost to proceed, again, in a case in which we were strangers to the litigation. Let me ask, you've mentioned AB 137. Why should that be retroactive? And do you have a position on whether the comparable New York statute also should be retroactive? So, Your Honor, I think under California Supreme Court law, the question would not be one of the most on-point cases called Western Security Bank. I would call a clarification in the law rather than a change in the law. And that's because Why is it a clarification if you're telling me that Lockyer already established your position? Why is that even a clarification? Precisely because that's what the legislature said. The legislature said, we are enacting a statute that is declarative of existing law as seen in cases like Barrett and Lockyer. So, the legislature was expressly moving to codify those judicial decisions. It wasn't creating a new right, in other words. So, there was nothing to be retroactive because it was not creating a new right. It was just codifying what the Supreme Courts have already decided. What the California courts had already said. That's precisely right, Judge Rawlinson. And the facts of the Western Security Bank case, which is 15 Cal 4232, track this almost exactly. There had been a rule that had been commonly understood, and then a California court of appeal issued an aberrant decision that kind of caught everyone by surprise, and the legislature came in and codified what had been the prior rule and said, this is declaratory of existing law, so essentially overruling the California court of appeal, and the California Supreme Court said, that's not a — that doesn't raise a retroactivity question. That's just clarifying what the law always has been, as evidenced by — the court said it's, of course, not dispositive that the legislature says declaratory of existing law, but in that case it was. And that stands in contrast to a — there's a later California Supreme Court case called McClung v. Edd that actually did change the law meaningfully, imposing new liabilities for past conduct, and that distinguishes the Western Bank case, and that that idea of imposing liabilities for past conduct is, of course, where you would see a more robust retroactivity analysis. And so, Judge Koh, at bottom, I think the significance of AB 137 is just confirming what the — what everyone on the California side of the V here had been saying all along, which is that California law is very clear as to the question of who — whether or not the AG, in his independent capacity, has legal control over independent agencies' documents. All right. Thank you, counsel. You've exceeded your time. Thank you. We hope to. Good morning, Your Honors. Good morning. May it please the Court. Mark Mosier on behalf of MEDA. I want to talk by — start by discussing how this case has made its way into federal court and before this court. We heard this described as an enforcement action brought by the Attorney General, but if the California Attorney General just sought to exercise its enforcement authority over state statutes that it is empowered to enforce, this case would be in state court. They would be able to rely on Lockyer to establish their obligations under the state rules of discovery. This case is in federal court for one reason and one reason only. But we — if it's in state court, we'd still give credence to the state court rulings that determine how the state court functions, don't we? Well, it wouldn't be before the court if this was in state court. Because we're in federal court, it's the federal rules. Right. So we're in federal court now. Correct. But when we're in federal court, we still give deference to the state court interpretation of state law. Correct. Correct. But the answer before this court — the question that was before the magistrate judge and the district court is, what are the state's obligations under the federal rules of civil procedure? That is a question of federal law. We are in federal court because they have asserted a cause of action on behalf of the people of the state of California and their parents' patriae authority under a federal statute. When you come voluntarily into federal court to assert a federal cause of action, you're subject to the federal rules of civil procedure. Exactly. So the issue here is whether Rule 34 or Rule 45 should govern the production of discovery. Correct. I see that as the issue. So what's your view on that in terms of the structure of the California state government? So both the magistrate judge and the district court accepted the State's representation and the State authority on the structure of the authority. As Judge Beatty alluded to earlier, it is only because the courts accepted the independence of the State attorney general and the State governor and the other agencies that we got to the issue of control. If the government was all one and the same, all of the documents would have been in the possession and custody of the government, so we wouldn't get to control. So how do you get to control by the attorney general of independent agencies? You look to the statutes and the authority given to the attorney general to handle litigation. And that's something we haven't seen in the briefing or from the argument for the State ever addressing, even though those are the statutes the magistrate judge and the district court relied on. But that's State law, right? So you're saying that we shouldn't consider Lockyer because it's State law and this is a Federal issue or procedure, but on the other hand, to determine control under citric acid, we look to State law. Are you parsing a distinction between case law and statutory law? No, I'm parsing a distinction between a look to State law to determine whether or not the State attorney general has legal access to documents held by the State agencies. But that's what I said at the beginning, that you push back on that. It's a separate question of whether, so there's the question of does the attorney general have possession, custody, or control over documents in the possession of agencies? That's a question of Federal law. We resolve that, we look to State law, and that includes provisions such as California Government Code, I mean the key one is 11-040, and it's one they don't discuss. And what that says, and this is where we get in this distinction, where we heard the representative from the attorney general office say they don't perform anything differently than my law firm does, they would come after the documents that we had. And Judge Gonzalez- Rogers explained why that analogy is not persuasive in footnote 12 of her opinion. The attorney general has control of the legal matters in which the State has an interest. Well, that's a different, that's different than saying the attorney general has control over documents that are maintained by independent State agencies or officials. But what, but what both the magistrate judge held and the district court judge said is the fact that... Well, we're reviewing that. Correct. So telling us that they held that doesn't help me, because I'm trying to decide whether or not that ruling is correct. So the fact that they decided that doesn't advance your argument one way or the other, because I'm just, we're trying to figure out, was that ruling correct? I think it's correct, but I would point out, well, we're on mandamus, and so it's not just that it's correct, it's a discovery order. So it's first was an abuse of discretion, because this was mandamus was it a clear abuse of discretion. Correct. But now I'll tell you. Correct. The attorney general has the authority to bring lawsuits on behalf of the agencies. If their lawsuit is brought against an agency, the attorney general represents them. And what... Always. Don't they have the right to get independent counsel separate and apart from the attorney general? They're not obligated to use the attorney general. They are under California law. The attorney general can allow them to get separate counsel. And that was critical to the district court's decision. It is up to the attorney general to decide whether or not to represent the agencies or to allow third-party counsel. That was, for Judge Gonzalez-Rogers, a critical distinction between the states in which he said had control under citric acid and the states that didn't. For several states, Nebraska, Kansas, I believe Rhode Island, for in those states, it's up to the agency. The agency can either have the attorney general represent them or not, or choose outside counsel. For those states, Judge Gonzalez-Rogers said no control under citric acid. But when the authority is in the attorney general to decide for himself whether or not to represent the agency, he must have control over the documents. Because otherwise, you put the attorney general in a position that the attorney general can file a lawsuit on behalf of an agency. He has to draft a complaint. But under their view, he couldn't get the documents necessary to draft the   But there's a different scenario here, according to the attorney general, that it's not being filed on behalf of any agency or any state official. It's being filed independently by the attorney general. And so how does that make him have legal control if he's not filing anything on behalf of any state agency or any state official? He's not filing it on behalf of the attorney general. He's filing it on behalf of the people of the state of California. Exactly. But not an agency, not an official. He's doing it independently as the representative of the people of the state of California. So that then presents a question as what documents does the attorney general have in his control that are held by the people of the state of California? And to make that determination, you look to citric acid. And can the attorney general access the documents? And both the magistrate judge and the district court went through statute by statute, state by state, what are the particular mechanisms and authorities given to an attorney general? And when the attorney general has the authority, like it does for California, to make determinations of what suits to bring, what suits to defend, and to do so not just, I mean, this is another distinction between a private law firm. They don't just act as the agent of the agency. Cases like D'Amico from the California Supreme Court say that the attorney general, when it is prosecuting a case on behalf of the people, also does what they view in the public interest. They're not just acting as an agent of the agencies. They're making the determination of how to prosecute the case. But the agencies aren't parties here. That's the difficulty. No agency or no government official is a party. And so that's why it's difficult to me to see how Rule 34 applied as opposed to Rule 45. It's really simple under Rule 45 to be able to get documents from non-parties. But it, to me, squeezing it into the Rule 34 for parties is an abuse of discretion, potentially, because it's not a fit there. So, I mean, I want to talk about the Rule 45 as well, because obviously, as the representative of the governor's office recommended, there were Rule 45 subpoenas served. All the documents have been produced. But the order does not address Rule 45. It addresses Rule 34. And that was the genesis for the petition, the application of Rule 34 to the state agencies and officials who are not parties to the lawsuit. Right. I mean, and this is going back. The party is the people of the state of California. And so then you have to get to the issue of what does that mean? And who does that, what documents do we get through party discovery? And there's no dispute that the documents that are in the possession, custody, or control of the attorney general are subject to Rule 34 discovery. Both the magistrate and the district court accepted that other state agencies are not parties. They are non-parties. And so the question as to them is does the attorney general have control over documents in their possession? Because the attorney general is empowered to litigate on their behalf, they necessarily must be able to access documents. So are you saying that the attorney general could decide to bring an action in the name of a particular state agency without that agency's agreement? Like you're going to be the plaintiff here. I'm filing on behalf of this agency. And then if the agency is like, well, we're not giving you any documents. So it sets up the problem that the state was laying out that then the agencies can veto the attorney general's ability to bring an enforcement action or to bring a lawsuit. So we interpret this State statute as authorizing the attorney general to bring that lawsuit. And I think that necessarily includes the power to get access to the documents. And so I think under State law, the agencies would need to provide the documents to the attorney general. We're not aware of any case in which that's actually happened. And Judge Kong goes through a number of cases in California State court where there has become an issue of whether the attorney general has represented one party and there's been requests for documents from another party and they've produced the documents. And so he was, I think, rightfully dismissive of this virtual veto concern because we shouldn't assume that the agency isn't going to comply. When you have a situation where the governor is of one party and the attorney general is of another and they don't have the same goals and the attorney general wants to bring a lawsuit in the name of a certain agency, if the agency says no, what happens? Are you suggesting that under California law, the attorney general can force an agency to be a party? Yes. I mean, that's the attorney general is the chief law enforcement officer of the State and under the State statutes is in charge of the legal matters on behalf of the State. Is there a case that you can cite us to in California that says the attorney general has authority to bring an action in the name of an agency or the governor against that agency or governor's wish? No, because I'm not aware of that ever coming up because then I think I'm not sure that it would. Well, California Government Code 12-511 says the attorney general has charge as attorney of all legal matters in which the State is interested. Under Section 11-040C, no agency may obtain separate counsel without the written consent of the attorney general. Let me ask you this, counsel, as a practical matter. If we did not grant the writ and make a proceeding to seek discovery under Rule 34 and the attorney general was unable, how would the attorney general as a practical matter be able to get the documents if the agency was unwilling to give them? As a practical matter, how would that work? So as a practical matter, and I hope to segue to our mootness argument, as a practical matter, we already have the documents. But that's not the point. We still have this decision that MEDA could always revert to to get documents under Rule 34. So we have to decide whether or not a mandamus should lie for that. So as a practical matter, if that ruling stands and documents are sought under Rule 34, the governor says no, as a practical matter, how would the agency get them? So as a practical matter, a couple of things. I want to come back to the point that MEDA can't return to Rule 34. But as a practical matter, yeah, okay, as a practical matter, if they told MEDA that we can't get the documents because the agency won't provide them to us, we could file a motion to compel. If that is still not complied with, we could then raise the issue with the magistrate judge. A magistrate judge, Kong, recognized, I think some of the questions earlier recognized, he could enter sanctions as to a non-party. And he said, I have, I trust that I have the ability to know why my order wasn't complied with. If the attorney general shows me that he's done everything he can to obtain compliance and the agency's just refused to follow my order, I can enter sanctions against them. But we did not come to that. But doesn't that show that the attorney general doesn't have legal control if he's unable to get the documents? No, because in any situation, there's always a threat that another party isn't going to comply with their legal obligations. If you look at the NRA citric acid itself, what it was analyzing is you had two separate corporate entities and it said in order to establish control, one needed to have a contractual right to get documents from the other. But you're always going to have a situation where the other party could just decide to breach their contract and say, regardless of the contract, we are going, not going to give you the documents. And then you would have to get, go to court and get an order compelling them to produce the documents. And that's the rule 45 route. But the rule 34 route is sanctioning the attorney general for failure to produce the documents. No, that was the rule 40, that was the rule 34 route. I mean, the rule 30, that's what I'm saying. The rule 34 route is sanctioning the attorney general as opposed to sanctioning the party that would not provide the documents. It could be either. Judge Kong made it very clear that he had authority to do either. He would look at if there was a failure to comply with the rule 34 order, he could look to see why that happened. Was it because the attorney general didn't try to get the documents from the governor's office or the other agencies, or because the other agencies failed to produce the documents even though they were ordered to do so by the federal court? And he said he could impose the sanctions on where he thought the fault lied. But I do want to come back to the mootness point. Actually, I'd like to ask some questions. I haven't been able to yet. So both the magistrate judge and the district judge relied heavily on In Re generic pharmaceuticals, number one and number two, and Monsanto. And those three all seem distinguishable to me. So number one dealt with Pennsylvania, but that has a statute that provides the attorney general, what's the language, the right to access at all times the books and papers of any commonwealth agency necessary to carry out his duties under this act, which obviously doesn't exist here. So for me, generic pharmaceuticals, one, inapposite. Okay, let's go to generic pharmaceuticals, number two. There, the agencies stood to benefit from the attorney general's success. And that's kind of similar to Monsanto, where the attorney general was seeking damages for the state agency's expenses. The action was brought at the behest of the state agencies. The state agencies supplied the information necessary for the complaint. And you have pretty explicit language that says there's zero Illinois case law stating that non-party state agencies, providing that non-party state agencies are, here, let me just get the exact language from Monsanto. But that's so not the case here because we have Lockyer. So in my mind, Monsanto is also inapposite. So what I don't understand is what is the limiting principle here? Is it that the attorney general, any time they bring apparens patriae action, all state agencies are deemed parties and subject to Rule 34 discovery? Because from what I can tell, none of those factors that comprise the circumstances in pharmaceuticals one and two in Monsanto and led those courts to make that determination are present here. So I think the closest analogy is the generic pharmaceuticals case. And the grounds that Your Honor distinguished on there, the other agencies had an interest, stand to benefit, I don't think are relevant for purposes of the legal control test under NRA Citric Acid. It's whether the attorney general has a legal ability to obtain the documents, which I don't think turns on some of the other factors Your Honor identified. So I don't think it's distinguishable on the same ground. But if I can discuss the limiting principle, I mean, the limiting principles in both lower court decisions recognize this. The limitations on discovery aren't governed through the possession, custody, and control. There are plenty of other ways, relevance. But when you have a case like Lockyer, right, where you have this state saying this is the organization of our state government, what is the legal mechanism for the state attorney general? Are you saying that there's always an attorney-client relationship between the state AG and all of the California state agencies at all times? I mean, that's what it sounds like. Then what is the legal mechanism before a Rule 45 subpoena is issued on a state agency? What's the legal mechanism for the state AG to grab those documents and have those state agency documents in the possession of the state AG? What's the legal mechanism? I think it comes under Section 11-040, the provision that the district court relied on that gives, that puts the attorney general in charge of the litigation on behalf of the state. And let me return to Lockyer and try to make clear the point that we're making about Lockyer. We accept Lockyer's statement of how the California government is structured. Okay, let me go to 11-040. I've got it right here. It is the intent of the legislature that overall fiscal efficiency and economy in state government be enhanced by employment of the attorney general's counsel for the representation of state agents and employees in judicial, administrative, adjudicative proceedings. Is that the language? It is the language here that says any time there's an enforcement action brought by the attorney general where the state agencies are not involved, have not supplied information, are not seeking any financial benefit or damages, that that means there's an automatic attorney-client relationship between the AG and the agency. So that is the narrower version of the statute that just became effective on June 30th as the passage of AB-137. The version of the law that was in effect when these decisions were issued, which is what we think is the rule. Okay, but I'm just looking at that. That language is the same. I am looking at the past version that was in effect until June of 2025. If I could, Your Honor, there's a critical difference. That language is the same. With respect, it's not the same. The prior version said that the attorney general should have the resources necessary to litigate on behalf of the State. The lower courts, the decisions here interpreted that to include access to documents. The statute was narrowed to financial. Okay, but the statute that I just read, I'm going to guarantee to you, is verbatim. I have it in front of me. I can read both of them if that would be helpful. Would that be helpful for me to read both of these? I'm telling you that's the exact same verbatim language in both the pre-June 2025 version and the post-June 2025 version. Okay, I — So where in there says that there is an automatic attorney-client relationship where the AG can access those agency documents, is in legal possession of those documents before a Rule 45 subpoena is issued? What it says, it doesn't use that term. What it says is that the attorney general is in charge of the legal matters on behalf of the State, especially when read in connection with Section 12, 511, and that agencies can only retain separate counsel with the consent of the attorney general. So it sets it up by default that the attorney general is representing the agency and it can depart from that only with the permission of the attorney general. All right, any other questions? If I could — Let me ask you. In Louisiana, I guess the attorney general and governor have sued each other 10 times in recent times. Yes. Okay, but you're going — your position is that doesn't matter. That attorney general has an attorney-client relationship with that governor, even though they're adverse to each other and have litigated against each other 10 times in recent memory. That's still an automatic attorney-client relationship. Not at all, Your Honor. Why is that? Because our position is that you have to look at the specific statutes of each state to determine the relationship between the executive and the attorney general and the governor in the State. And I'll just note for the record — So was Lockyer wrongly decided? That has to be your position, because — right? Is your position Lockyer's not wrongly decided? Then how does it square with your interpretation of 1140? Yeah, one last statement on Louisiana, and I'll switch to that. And that's just to say that Judge Gonzales-Rogers said that the Louisiana attorney general does not have control over the governor's documents. So they were not subject to this order. On Lockyer, our position is Lockyer is not wrongly decided. Our position is it decided the issue of possession, custody of control under State law. California State law is entitled to have a narrow — Right, but this is a State statute, correct? What you just cited, 11040, that's a State statute. That's not a Federal statute, right? But it also was not interpreted in Lockyer. Lockyer reached the result it did by adopting a narrower interpretation of possession, custody, and control under Section 2031 of the California Civil Code. The way the Lockyer court approached possession, custody, and control, it didn't parse the language like this court did in Wray-Citric Acid. What it did is it first looked to a criminal law case and said, in the criminal context, we determine that the prosecutor has control over any documents related to an investigation related to the case. We think that rule makes sense in the civil context. And so Lockyer doesn't actually go so far as suggest on the other side to say that the attorney general never has control over documents under other agencies. The rule adopted, it's a rule of California law, is that the attorney general has control over the agency documents related to investigations related to the case. Now, that's an issue of California law. They are — California can adopt that rule, but it doesn't govern in Federal court, which is governed by Citric Acid. As public policy dictates, that COLE be required to serve subpoenas directly upon State agencies to obtain their documents or witnesses. It would be unduly burdensome if any time the people are a party to a litigation, they are required to search for documents from any and all State agencies that the propounding party demands. Yes, and our position is that is a statement and an interpretation of Section 2031 of the California Civil Code establishing the scope of discovery. But that doesn't negate what the language says, though. The language says what it says in a different context, perhaps, but it's still — the meaning of the language is still there. Correct. And so as a matter of State civil procedure, Meta may not have been able to get the documents had they just brought this as a State law case in State court. Once they come into Federal court, they're subject to broader discovery. I mean, one last point about Locke here. I'm sure Your Honors have dug into the weeds on the case. But one of the issues is there was a related case in Federal court, and it was clear that the discovery that the plaintiff was able to obtain from the attorney general was broader in Federal court, because that was under the Federal rules. And a lot of the fight then was could the plaintiff in Locke here in the State court case get access to the State documents? And ultimately, they weren't able to, because Locke here interpreted State rules of civil procedure more narrowly than Federal courts have interpreted Federal rules of civil procedure. All right. Counsel, we've taken you way past your time. Thank you. Two minutes. I will make a couple of points. Thank you. We've heard a lot of talk about California law statutes 12-5-1-1, 1-1-0-4-0. A lot of weight has been put on them. Those are two fairly generic statutes from 1945, the political code, about the attorney general's role in representing various State agencies as outside counsel. Well, but do you agree with opposing counsel that no State agency may get counsel other than the attorney general without the consent of the attorney general? Do you agree with that? The law has since changed. But, yeah, that — I mean, there were agencies like the governor or the U.C. system who were not necessarily — but, yes. But it was — Yes, what? It was — authority to obtain outside counsel was freely given, as is the case here was also — Was it required? In the first instance, yes, in certain situations, but only when those agencies were appearing in adjudicated proceedings or judicial proceedings. So Rule 45s would not have triggered this. And the law has since changed for Rule 45s and discovery. But, again, my earlier argument, the law firm representation is not dispositive of this issue. The point I want to make about 12-5-1-1 and 1-1-0-4-0 is they're from 1945, and Lockyer was decided with these statutes already enacted. I'm sorry. Are you saying this is not a judicial or administrative adjudicated proceeding? It was. I mean, it certainly turned — This lawsuit? It's — our law enforcement action brought in the name of the people of the State of California is, but when these State agencies received discovery requests or Rule 45 requests, it was not at that stage yet, no. As Mr. Goldman said, agencies routinely get Rule 45 requests and handle them through inside — in-house counsel, general counsel. They don't get referred to the Attorney General's office. Standard of review, Ninth Circuit has been clear it's ordinary error in matters of first impression where the Ninth Circuit hasn't ruled. This is clearly a matter of first impression. It's never gotten up here. We don't need ordinary error. We — I believe we went under any standard of review, but I just want to leave the panel with that. A lot of talk has also been given about what the rules should be and what the limiting principle is. I've got one. If State law structures the government so that the Attorney General is independent of other executive officers or agencies, then the Attorney General does not have legal control under citric acid of those other officers' agencies — those officers' agencies' documents when the Attorney General brings an enforcement action in his independent capacity, regardless of whether the Attorney General represents those officers or agencies in other matters. And here's the limiting principle. Barring some express provision to the contrary in State law, and certainly in California, there is none, and Lockyer makes clear there is none. All right. Thank you, counsel. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are recessed until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, BADE, KOH